IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

SCOTT A. LOVELACE,

                                    CV 08-3107-PA

        Plaintiff,

    v.                          **OPINION AND ORDER**

STATE OF OREGON, et al.,

        Defendants.

**PANNER, J.**

    Plaintiff Scott Alan Lovelace, a state parolee, brings
this action against state and county officials, Jackson County,
and Lynette Milligan, a therapist who treated plaintiff.  I
grant defendants' motions for summary judgment and deny
plaintiff's motion.

**BACKGROUND**

**I.  Plaintiff's Rape Conviction**

    In February 1986, plaintiff "met a woman at a bar and took
her to his residence.  When she refused his sexual advances he
threw her to the floor, choked her almost to the point of
unconsciousness and told her she would be able to see her
children if she would 'behave herself'.  He then raped her."
Wheeler Aff., Attach. 2, at 10.

    In 1987, plaintiff was convicted in Jackson County Circuit

1  -  OPINION AND ORDER

Court of first-degree rape and sentenced to twenty years, with a minimum term of ten years.

## II. Plaintiff's Assault Conviction

A few weeks after committing the rape, plaintiff assaulted a woman in Gresham, Oregon. See Lovelace v. Santos, 2004 WL 1068780, at *1-2 (D. Or. 2004). The victim testified that after plaintiff met her in a bar, he drove her from the bar to a dark parking lot and forced her at knife point to undress and engage in oral sex. The victim testified that afterwards, frightened for her life, she tried to escape from the moving car but plaintiff grabbed her wrist and would not let her go. Skid marks indicated that plaintiff dragged the victim along the pavement more than 200 feet before braking, and continued another 100 feet before stopping. Plaintiff then drove away. The victim was hospitalized for a month with abrasions over 80% of her body.

At trial, plaintiff testified that he had consensual sex with the victim and that the victim panicked when he accidentally picked up a knife he kept in the car. Plaintiff claimed that grabbing the victim's arm "was a reasonable reflex reaction intended to prevent the victim from harming herself, and that the accelerator pedal of his car became stuck, prohibiting him from stopping the car." Id. at *2.

The jury found plaintiff guilty of assault. The trial judge determined that plaintiff was a dangerous offender and imposed an indeterminate sentence of thirty years. The conviction and sentence were affirmed on direct appeal. State v. Lovelace, 94 Or. App. 586, 590, 767 P.2d 80, 82 (1989)

(ruling that the "presentence report, the evidence in the case and the psychiatric reports provide sufficient evidence to support the trial court's finding that defendant is a dangerous offender"); but see Lovelace v. Zenon, 159 Or. App. 158, 976 P.2d 575 (1999) (dangerous offender enhancement vacated because defense counsel did not argue jury should decide the issue).

### III.  Conditions of Release

In April 2004, plaintiff was released on parole.  The state Board of Parole and Post-Prison Supervision (the Board) imposed conditions of release.  The Board found that plaintiff was a predatory sex offender.  ORS 181.585-.587.

Among the conditions of release, plaintiff was

1) prohibited from "form[ing] personal relationships with women without the prior approval of the parole officer and treatment provider";

2) prohibited from "viewing, listening to, owning or possessing any sexually stimulating visual or auditory materials that are relevant to the person's deviant behavior";

3) prohibited from frequenting, without prior written consent, places where minors regularly congregate;

4) required to consent to a search of his person, his vehicle, and his residence on request if parole officials have reasonable grounds to believe that evidence of a violation will be found; and

5) required to complete, or be successfully discharged from, "a sex offender treatment program approved by the Board, supervisory authority, or supervising officer," which "may include polygraph and plethysmograph[1] testing."

---

[1]  "Penile plethysmograph testing is a procedure that 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses.'" United States v. Weber, 451 F.3d F.3d 552, 554 (9th Cir. 2006) (quoting Jason R. Odeshoo, Of Penology and Perversity: The Use of Penile

Wheeler Aff., Attach. 1, at 1-2.  If plaintiff violated a
condition of parole, he could be arrested and returned "for an
in-custody Morrissey and future disposition hearing before the
Board."  Id. at 1 (referring to Morrissey v. Brewer, 408 U.S.
471 (1972), which sets minimum due process requirements for
parole revocation hearings).

Plaintiff challenged his release, contending that with
accumulated "good time" credit, he was eligible for release at
a later date.  Plaintiff preferred a later release date because
he wanted to avoid mandatory sex offender treatment.  In June
2006, the Board rejected plaintiff's challenges to the timing
of his release and to the conditions of parole.  Bloom Decl.,
Ex. 4.  The Board ruled that Oregon law prohibited inmates from
rejecting release on parole.  Citing plaintiff's history and
criminal record, the Board concluded "it is appropriate to
require that you have mental health evaluations and treatment,
that your personal relationships are monitored, and that your
computer activity is subject to review."  Bloom Decl., Ex. 4,
at 2.  The Board held that because first-degree rape was a sex
crime under Oregon law, "it is not within the discretion of the
board to delete or alter" conditions of parole for sex
offenders.  Id.

IV.  **Events After Plaintiff's Release**

After release, plaintiff was employed full-time and
attended Southern Oregon University.

Plaintiff enrolled in a sex offender treatment program run

_Plethysmography on Convicted Child Sex Offenders_, 14 Temp. Pol. &
Civ. Rts. L. Rev. 1, 2 (2004)).

by Steven Mounce, Ph.D.  Dr. Mounce stated that psychological reports

> portrayed [plaintiff] as being characterologically
> disordered (antisocial among others).  At best, these
> reports tend to indicate that while [plaintiff] can,
> and has, benefited [sic] from treatment to a slight
> degree, that overall prognosis is very poor.  Several
> psychologists after assessing [plaintiff] have made
> the statements that he was  a danger to the
> community.  One of these assessments indicated that
> [plaintiff] was showing "early features of a sexual
> psychopath."  Consistant [sic] with these reports,
> [plaintiff's] attitude has been slowly regressing in
> treatment.

Grey Decl., Ex. 18 (citations omitted).

Dr. Mounce twice suspended plaintiff from sex offender treatment for downloading and viewing pornography.  In December 2005, Dr. Mounce concluded that plaintiff was "not amenable to treatment," and terminated him from the sex offender treatment program.  In August 2006, plaintiff enrolled in a sex offender treatment program run by defendant Lynette Milligan.

In September 2006, parole officers denied plaintiff's request to travel to the east coast to visit his sister, who was dying of cancer.  Plaintiff was not allowed to travel out of state "unless he complied with sex offender treatment and made progress."  Wheeler Aff., Attach. 2, at 5.

On September 20, 2006, parole officer Nathan Gaoiran, a defendant here, required plaintiff to schedule a plethysmograph; to comply with sex offender treatment, including disclosing his sexual history; and to stop "physically attend[ing] the Southern Oregon University campus until [successfully completing] the Full Sexual History Disclosure and Plethysmograph as directed."  Bloom Decl., Ex.

5  -  OPINION AND ORDER

5.  Gaoiran based his directives on the

> Parole Department's concern of your assessed high
> risk in the community, not yet progressing through
> sex offender treatment, your predatory status,
> criminal history, and the age of your past victims.
> Further, I am aware Southern Oregon University has
> minor children on campus, which may compromise your
> compliance on supervision . . . .  I am further
> concerned for the unsuspecting women and minors at
> Southern Oregon University who are unaware of your
> sexual predatory status.

Id.  Dr. Mounce earlier reported that plaintiff had videotaped a female student at Southern Oregon University without her permission.  "When she realized she was being video taped, she became alarmed and contacted security."  Grey Decl., Ex. 18.

In October 2006, plaintiff took a plethysmograph test. Dr. Steven Mussack, Ph.D. found "consistent evidence of Response Interference," which was "most likely due to purposeful efforts to control sexual arousal response, some significant respiratory difficulty or high levels of anxiety which were not directly observable."  Bloom Decl., Ex. 6, at 5. Plaintiff admitted "making purposeful efforts to display arousal during the presentation [of] the Female Challenge segment, which confirms the assessment of invalidity."  Id. at 6.  Plaintiff now explains that he was anxious because of his sister's illness.

Milligan completed a Hare Psychopathy Checklist-Revised (PCL-R) for plaintiff, concluding that plaintiff was in "the 100th percentile for Psychopathy."  Grey Decl., Ex. 30, at [2] (unpaginated).  Based on her familiarity with plaintiff through treatment, as well as plaintiff's medical and criminal history, Milligan found that plaintiff exhibited the traits associated

with psychopaths, including superficial charm; a grandiose
sense of self-worth; a need for stimulation; pathological
lying; manipulation; lack of remorse; callousness and lack of
empathy; a parasitic lifestyle; promiscuous sexual behavior;
early behavioral problems; unrealistic long-term goals;
impulsiveness; failure to accept responsibility for his own
actions; juvenile delinquency; and criminal versatility. Bloom
Decl., Ex. 6, at 10-12.

In October 2006, parole officer Gaoiran reported that
plaintiff had violated parole by attending, without prior
approval, a church where he knew minors congregated. Gaoiran
also reported an anonymous tip that plaintiff was making
"sexually inappropriate comments at work, asking for phone
numbers at his place of work and giving motorcycle rides to
women [who] are unaware of his predatory status." Gaoiran
proposed a sanction of 15 days' jail time, and recommended that
plaintiff's parole be revoked.

On November 30, 2006, Milligan reported to Gaoiran that
she was suspending plaintiff from sex offender treatment
because he failed to comply with the plethysmograph test.
Because of the suspension from treatment, plaintiff was placed
in custody pending a formal hearing.

At the hearing in February 2007, plaintiff testified he
thought that taking the plethysmograph was voluntary.
Plaintiff said he was anxious during the test and "he
purposefully contracted his 'coxytax [sic] muscle' because he
was concerned that he was having little if any sexual arousal
to any of the appropriate visual stimuli . . . ." Wheeler

Aff., Attach. 2, at 7.  The hearings officer found that
plaintiff in effect had refused to take the plethysmograph,
violating a condition of parole.  Plaintiff now denies using
"countermeasures or in any way attempting to interfere" with
the test.  Lovelace Decl. at 7.

In April 2007, the Board reviewed the hearing officer's
recommendations.  The Board disagreed with the recommendation
that plaintiff's parole be revoked and ordered that parole be
continued.

In April 2007, Milligan terminated plaintiff from sex
offender treatment.  Milligan reported that plaintiff's "level
of psychopathy, combined with his non-compliant behaviors, the
results of testing and assessment, and his attempts to
manipulate treatment requires specialized treatment that I can
not offer in a community outpatient based program."  Bloom
Decl., Ex. 14, at 2.

Milligan also reported that plaintiff "attempted to
manipulate the treatment process by blackmailing me."  Id. at
1.  Milligan explained:

> Mr. Lovelace informed me that he was "looking into"
> filing an ethical violation with ATSA [Association
> for the Treatment of Sexual Abusers] against me.  I
> asked him what he felt I had done to violate ATSA's
> ethical standards and he told [sic] that he "didn't
> know" but that his attorney "had assured" him that
> they "could find something".
>
> Mr. Lovelace then asked me if I was allowing him back
> into my program.  I told him that I would not be able
> to treat him if he was going to file ethical
> violation allegations against me.  He then stated
> that his goal was to "remain out of prison" and that
> if I "could help him remain out of prison" that he
> would "speak" to his attorney regarding "whether or
> not" they "needed to file allegations against me".

8  –  OPINION AND ORDER

Id.  Plaintiff denies trying to blackmail Milligan.

Plaintiff was arrested for violating parole because he had
been terminated from sex offender treatment.  Plaintiff was
detained pending a hearing.

In August 2007, the hearings officer recommended continued
parole and release from custody.  In September 2007, the Board
adopted the hearings officer's recommendations and continued
plaintiff on parole.

Plaintiff asked for permission to pursue a romantic
relationship with Connie Britt, a co-worker.  In March 2008,
parole officer Glenn Sandy, a defendant here, denied
permission.  Sandy states he allowed plaintiff to make one
phone call to Britt to tell her permission had been denied.
Plaintiff claims that Sandy allowed him to telephone Britt
whenever he wanted.

The Board then ordered plaintiff "to have no further
contact with Connie Britt outside the work place."  Wheeler
Aff., Attach. 4, at 8.  In June 2008, a Jackson County official
informed plaintiff, "there is to be no contact with Connie
Britt outside of work."  Bloom Decl., Ex. 18, at 2.  Despite
these directives, plaintiff claims that he reasonably thought
that he was allowed to telephone Britt.

In December 2008, parole authorities conducting a
compliance check at plaintiff's residence found plaintiff
talking to Britt by telephone and a computer web camera.
Plaintiff was arrested for violating conditions of parole and
taken into custody.

In telephone calls from jail, plaintiff told his roommate

9  —  OPINION AND ORDER

to remove evidence of parole violations.  In February 2009,
plaintiff pleaded guilty to conspiracy to tamper with physical
evidence and was sentenced to ten days' imprisonment.  In May
2009, the Board revoked plaintiff's parole.

### STANDARDS

The court must grant summary judgment if there are no
genuine issues of material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P.
56(c).  If the moving party shows that there are no genuine
issues of material fact, the nonmoving party must go beyond the
pleadings and designate facts showing an issue for trial.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### CIVIL RIGHTS CLAIMS

To establish a claim under 42 U.S.C. § 1983, the plaintiff
must show that the defendant, while acting under color of state
law, deprived the plaintiff of a federal constitutional or
statutory right.  Anderson v. Warner, 451 F.3d 1063, 1067 (9th
Cir. 2006).  Plaintiff asserts that defendants violated his
rights under the Ex Post Facto clause by ordering early
release; violated his Fourth Amendment rights by authorizing
searches, arrests, and confinement without reasonable suspicion
or probable cause; violated his Fifth Amendment rights by
compelling a plethysmograph and disclosure of sexual history;
violated his procedural due process rights by withholding
documents and by failing to provide written findings or timely
notice of administrative decisions; and violated his
substantive due process rights by unreasonably interfering with
his access to the courts, ability to maintain family

10 -  OPINION AND ORDER

relationships in a medical emergency, and ability to form relationships with members of the opposite sex.

## I.  Members of the Parole Board

Defendants Steven Powers, Darcy Baker, and Candace Wheeler, members of the Board of Parole and Post-Prison Supervision, seek to amend their answer to assert the affirmative defense of absolute immunity.  Their answer raises qualified immunity but not absolute immunity.  Because plaintiff has not shown prejudice, I grant the motion to amend the answer.  See Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993).

Absolute immunity covers "decisions 'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges."  Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004) (quoting Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)). Here, the Board defendants are entitled to absolute immunity because plaintiff's claims against them are based on quasi-judicial actions: issuing the orders that released plaintiff and set conditions of parole, and presiding over parole revocation proceedings.

To the extent plaintiff bases his claims on events before October 2006, such as the imposition of conditions of parole in April 2004, those claims are barred by the applicable two-year statute of limitations.  Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2002).  In addition, none of the named defendants were serving on the Board in 2004 when the Board issued the orders releasing plaintiff and setting conditions of

11 -  OPINION AND ORDER

parole.  Plaintiff also cannot show that his release on parole
before his good time release date violated his constitutional
rights.  See Parker v. Belleque, Civ. No. 06-732-MA, 2008 WL
4058008 (D. Or. Aug. 25, 2008) (rejecting similar claim).

Plaintiff claims that the Board improperly withheld
documents and delayed sending him copies of decisions.
Plaintiff cannot show that these alleged procedural failures
damaged him because he prevailed in the parole revocation
proceedings at issue.

## II.  Max Williams, Director of ODOC

Max Williams, director of Oregon Department of
Corrections, is entitled to summary judgment because the Board,
not Williams, has authority to order the release of "matrix
inmates" such as plaintiff.  See Brown v. California Dep't of
Corrections, 554 F.3d 747, 752 (9th Cir. 2009) (under
California law, warden "lacked independent authority to make
prison release decisions, as that is the parole board's
responsibility").  In any event, the timing of the release did
not violate plaintiff's rights.  See Parker.

## III.  Lynette Milligan

Milligan is not liable under § 1983 because she was not a
state actor.  Private persons may be liable if they acted
"under color of state law" through joint action with state
officials.  Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 2002).
"A plaintiff may demonstrate joint action by proving the
existence of a conspiracy or by showing that the private party
was 'a willful participant in joint action with the State or
its agents.'"  Id. (quoting Collins v. Womancare, 878 F.2d

12 -  OPINION AND ORDER

1145, 1154 (9th Cir. 1989)).  Plaintiff has not shown
sufficient cooperation between Milligan and parole officials to
justify treating Milligan as a state actor.  Nor has plaintiff
shown that Milligan was performing a government function in
providing sex offender treatment and reporting to parole
officials on the progress of treatment.  See Kirtley v. Rainey,
326 F.3d 1088, 1093 (9th Cir. 2003); see also Stafford v.
Cassidy, Civ. No. 04-3078-HO, slip op. at 5 (D. Or. May 13,
2005) ("It is not enough that plaintiff is required to complete
[sex offender] treatment as a condition of parole.").

**IV.  Parole Officers and Jackson County**

     Taking the evidence in the light most favorable to
plaintiff, I conclude that the actions of the Jackson County
defendants did not violate plaintiff's constitutional rights.

     The state "may closely supervise parolees and impinge on
their privacy rights to a greater extent than on the rights of
the general public because the administration of the parole
system is within the state's 'special needs' to ensure that the
parolee observes the conditions of parole." Motley v. Parks,
432 F.3d 1072, 1083 (9th Cir. 2005) (en banc) (quoting Griffin
v. Wisconsin, 483 U.S. 868, 873 (1987)).  Here, the County
defendants were responsible for supervising a parolee who was
designated by the Board as a predatory sex offender.  Parole
officials may order sex offenders to participate in treatment.
See Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997).  Parole
officials may require that a sex offender take plethysmograph
test if, as here, there has been an individualized
determination that the test is appropriate.  See United States

13 -  OPINION AND ORDER

v. Weber, 451 F.3d 552, 568 (9th Cir. 2006) (condition of federal supervised release).

Plaintiff has not shown that the County defendants violated his Fifth Amendment privilege against self-incrimination because the threat of incrimination here is only speculative. See United States v. Antelope, 395 F.3d 1128, 1134 (9th Cir. 2005). Nor has plaintiff shown that defendants violated his Fourth Amendment rights when they arrested and detained him on reasonable suspicion that he had violated the terms of parole. See Motley, 432 F.3d at 1083.

The enforcement of the prohibition of plaintiff's relationship with Britt did not violate plaintiff's rights, given plaintiff's criminal history, designation as a predatory sex offender, failure to complete sex offender treatment, and repeated parole violations. The restriction on plaintiff's travel was also reasonable. See Bagley v. Harvey, 718 F.2d 921, 923 (9th Cir. 1983).

Even assuming, for purposes of summary judgment only, that plaintiff could show any constitutional violations, the Jackson County parole officials are entitled to qualified immunity. Reasonable parole officers could have believed in light of settled law that they were not violating plaintiff's rights when they enforced the conditions of parole imposed by the Board. See Carlo v. City of Chino, 105 F.3d 493, 500 (9th Cir. 1997) (elements of qualified immunity defense).

Plaintiff's claims for injunctive relief from the conditions of parole are moot because the Board revoked parole in May 2009.

14 - OPINION AND ORDER

**STATE LAW CLAIMS**

**I.  False Arrest and False Imprisonment**

Plaintiff brings a claim for false arrest and false imprisonment against Jackson County and Lynette Milligan. Plaintiff has not shown that his confinement was unlawful. <u>See Hiber v. Creditors Collection Serv. of Lincoln County, Inc.</u>, 154 Or. App. 408, 413, 961 P.2d 898, 901 (1998).

**II.  Abuse of Process**

Plaintiff brings a claim for abuse of process against defendants Jackson County and Milligan. "'Abuse of process' is the perversion of a process that is regular on its face to a purpose for which the process is not intended." <u>Pfaendler v. Bruce</u>, 195 Or. App. 561, 571, 98 P.3d 1146, 1152 (2004) (citations omitted). Plaintiff has not presented evidence that defendants had "some ulterior purpose, unrelated to the process" or that defendants committed "a willful act in the use of the process that is not proper in the regular conduct of the proceeding." <u>Id.</u> at 572, 98 P.3d at 1152 (citation and footnote omitted).

**III.  Intentional Infliction of Severe Emotional Distress**

Plaintiff brings a claim for intentional infliction of severe emotional distress against defendants Jackson County and Milligan. Plaintiff has not shown that the conduct of the County defendants or Milligan was outrageous enough to support an IIED claim. <u>See McGanty v. Staudenraus</u>, 321 Or. 532, 543, 901 P.2d 841, 849 (1995).

**CONCLUSION**

The State defendants' motion to amend the answer (#89) is

15 –  OPINION AND ORDER

granted.  Defendants' motions for summary judgment (#33 (County
defendants); #45 (Milligan); #59 (State defendants)) are
granted.  Plaintiff's motion for summary judgment (#49) is
denied.

IT IS SO ORDERED.

DATED this 10th day of August, 2009.


_____/s/_____
OWEN M. PANNER
U.S. DISTRICT JUDGE